IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ALLEN NEELY CAFFEY, # B-42191** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 13-322-GPM |
| | ) |
| **S.A. GODINEZ, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Stateville Correctional Center ("Stateville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has filed a First Amended Complaint (Doc. 7), which is now before the Court for a preliminary review pursuant 28 U.S.C. § 1915A.

Plaintiff is serving a life sentence for murder. His claims arose while he was incarcerated at Menard Correctional Center ("Menard") and Pontiac Correctional Center ("Pontiac"). Plaintiff has brought suit against Defendant Godinez, Director of the Illinois Department of Corrections, as well as, seven Menard correctional officers and nine prison staff members at Pontiac. Plaintiff claims that while he was incarcerated at Menard, certain Defendants retaliated against him and others subjected him to excessive force. Plaintiff also claims that after he was transferred to Pontiac, he was housed in unconstitutional conditions, his medical needs were ignored, and his property was destroyed.

More specifically, Plaintiff asserts that prior to the events which led to the claims herein, he

had brought and settled a lawsuit in the Northern District of Illinois, *Caffey v. Lake*, Case No. 05-C-6803 (filed Apr. 6, 2006). The settlement agreement (Doc. 7-2, pp. 15-20) specified that along with a cash payment to Plaintiff, he would be given a porter job at Menard (Doc. 7, p. 6). Further, he would not "be disciplined or discharged from this position absent a valid penological reason" (Doc. 7-2, p. 16). Plaintiff received the porter job and was assigned to the prison chapel. He was later moved to a clerk position in the prison library.

On June 29, 2011, while Plaintiff was working in the library, another inmate had an altercation with Officer Rose (who is not a Defendant) (Doc. 7, p. 7). Plaintiff and the many other prisoners present were handcuffed and taken to be interviewed about the incident. During the next three hours, all the other prisoners were questioned and released. Defendants Hasemeyer and Henry then interviewed Plaintiff. He maintained he had not been involved in the altercation, did not know the name of the inmate perpetrator, and had no knowledge of why it occurred. However, Plaintiff claims that Defendants Hasemeyer and Henry accused him of lying and trying to cover up an assault on an officer. *Id*. Plaintiff asked them to bring in Officer Rose as a witness to back up his story, but this request was denied. Plaintiff claims that Defendants Hasemeyer and Henry then told him that if he wanted to keep his job and avoid discipline, he must help the Internal Affairs Unit with an investigation of the Gangster Disciples ("GD's"), by infiltrating the gang's inner circle and becoming an informant. Plaintiff, who had not been associated with the GD's since 1993, refused.

According to Plaintiff, Defendants Hasemeyer and Henry responded that Plaintiff would be confined in "investigative status" for 30 days while he reconsidered their offer (Doc. 7, p. 8). An investigative report was filed against Plaintiff by Defendants Henry and Moore (Doc. 7-1, p.

3).    Plaintiff spent the next eight days in the "confinement unit" at Menard, during which he was denied basic toiletries and a change of underwear (Doc. 7, p. 9).   Plaintiff filed a grievance over this action and the unprofessional conduct of the Defendants who pressured him to become an informant (Doc. 7, pp. 9, 18-20; Doc. 7-1, pp. 1-2).   Plaintiff was released from the confinement unit on July 15, 2011.   It does not appear that any formal disciplinary action was taken against Plaintiff.

On July 29, 2011, about 30 days after the library incident, Plaintiff was removed from his cell by Defendant Maue and several other members of a tactical team, to be transferred out of Menard (Doc. 7, pp. 9-10).   Plaintiff claims that he was pushed, lost his footing, and was struck in the head on the way to the bus.   Plaintiff further claims that while he was being loaded on to the bus, Defendant Scott shackled Plaintiff's ankles tightly, pushed him down, and ignored his request for medical attention (Doc. 7, p. 11).

After several hours, Plaintiff arrived at Pontiac, where he asked for a doctor to attend to his injured head and numb feet.   According to Plaintiff, Defendants John Doe #2 (Pontiac medical officer), John Doe #5 (Pontiac correctional officer), and later Defendants Berry, Brown, and Eilts,[1] all ignored Plaintiff's requests for medical attention (Doc. 7, pp. 11-12, 14-15).

Plaintiff claims that he was placed in a cell that was flooded, dirty, and smelled of urine. He had no toiletries or cleaning supplies, nor was he given shoes, a change of clothing, or any of his personal property.   Defendant John Doe #5 ignored Plaintiff's requests for these items, telling him to file a grievance (Doc. 7, p. 13).   Plaintiff had no pen, paper, or grievance form. Defendants Best, Berry, and Eilts also denied Plaintiff's requests for soap and cleaning supplies (Doc. 7, pp. 13-14).

---

[1]   This Defendant's surname is incorrectly spelled as "Elits" on the Court Docket Sheet.

Plaintiff did not receive toiletries, cleaning supplies, or any of his personal property until a month later on August 30, 2011 (Doc. 7, p. 13).  His gold chain and cross were missing, and his color television, typewriter, and lamp had been broken.  He later received compensation, but only for the broken lamp (Doc. 7, p. 16; Doc. 7-2, pp. 13-14).  Defendant Best told Plaintiff that his property had not been inventoried until August 23, 2011, and had been withheld from him and destroyed because Plaintiff "pissed off" Menard officials.  *Id*.  Plaintiff asserts that Defendant Richard, who was the personal property officer at Pontiac, was responsible for this delay and withheld his property as punishment (Doc. 7, p. 15).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action:

**Count 1:**  Retaliation claim against Menard Defendants Hasemeyer, Henry, and Moore, for causing Plaintiff to be placed under investigation and transferred, and for allowing or directing the destruction of Plaintiff's property, after Plaintiff filed grievances and refused to cooperate in the gang investigation;

**Count 2:**  Excessive force claim against Menard Defendants Maue and Scott;

**Count 3:**  Deliberate indifference to medical needs claim against Defendant Scott;

**Count 4:**  Eighth Amendment claim against Pontiac Defendants Best, Berry, Eilts, and John Doe #5, for housing Plaintiff in unsanitary conditions and refusing to provide him with cleaning supplies, adequate clothing, or toiletries;

**Count 5:**  Eighth Amendment claim against Pontiac Defendants Brown, Berry, Eilts, and

John Does #2 and #5 for deliberate indifference to medical needs; and

**Count 6:** Retaliation claim against Pontiac Defendant Richard, for withholding and destroying, or allowing the destruction of, Plaintiff's property because of Plaintiff's protected activity at Menard.

**Dismissal of Count 7**

However, Plaintiff does not have an independent constitutional claim for being held in poor conditions in Menard for eight days after being placed on investigative status. This claim, designated as **Count 7**, shall be dismissed. A short-term denial of hygiene items and a change of clothing does not amount to an objectively serious deprivation of constitutional dimensions. Only substantial deprivations of basic human needs like food, medical care, sanitation, and physical safety will trigger Eighth Amendment scrutiny. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). Plaintiff's circumstances during his eight-day confinement in Menard do not compare with other cases where the courts have recognized an Eighth Amendment claim. *See, e.g., Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink"). Temporary discomfort that does not result in physical harm will not implicate the constitution. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (plaintiff deprived of toilet paper for five days; soap, toothbrush and toothpaste for 10 days; and who was kept in a "filthy" cell alleged only temporary neglect and his claims did not reach unconstitutional proportions). Because Plaintiff's complaint does not

indicate an objectively serious deprivation during this period, no inquiry is necessary into whether any of the Menard Defendants had the required culpable state of mind to sustain an Eighth Amendment claim. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Count 7 shall be dismissed with prejudice.

**Defendants Godinez, Spiller, and John Does #1, #3, and #4**

Plaintiff has failed to state a claim against Defendants Godinez (IDOC Director), Spiller[2] (Menard officer), John Doe #1 (Menard Warden), John Doe #3 (Pontiac lieutenant), or John Doe #4 (Pontiac sergeant). Although he includes these Defendants in his list of parties (Doc. 7, pp. 2-3), he fails to describe any alleged unconstitutional actions by any of them in the body of his complaint. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Defendants Godinez, Spiller, and John Does #1, #3, and #4 will be dismissed from this action without prejudice.

**Severance of Claims**

The Seventh Circuit has emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the

---

[2] Plaintiff states only that Defendant Spiller "wrote [a] second investigative report, 7-29-2011" but does not connect this action to any infringement of his constitutional rights (Doc. 7, p. 2).

Prison Litigation Reform Act. *George v. Smith,* 507 F.3d at 607, *citing* 28 U.S.C. §§ 1915(b), (g). Plaintiff's complaint contains two sets of unrelated claims against different defendants. Counts 1, 2 and 3 involve events and Defendants at Menard, while Counts 4 and 5 arose from separate actions and events at Pontiac. Although Count 6 is against a single Pontiac Defendant, it appears to be factually and legally related to the retaliation claim in Count 1, and may remain in the present action at this time.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Counts 4 and 5 of Plaintiff's complaint, and shall open a new case with a newly-assigned case number for those claims. However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on those claims or incur the additional filing fee. Furthermore, because the claims in Counts 4 and 5 are against Defendants who are employed at Pontiac and arose in the Central District of Illinois, the new case shall be transferred to that judicial district if Plaintiff elects to go forward with it. Service shall not be ordered on Pontiac Defendants Best, Berry, Eilts, or Brown at this time.

**Disposition**

**COUNT 7** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **GODINEZ, SPILLER,** and **UNKNOWN PARTIES/JOHN DOES #1, #3, and #4** are **DISMISSED** from this action without prejudice. The Clerk is further **DIRECTED** to correct the spelling of **DEFENDANT EILTS'** name.

**IT IS HEREBY ORDERED** that the claims against the Pontiac Defendants in **COUNTS 4 and 5**, which are unrelated to the retaliation, excessive force, and deliberate indifference claims

in Counts 1, 2 and 3, are **SEVERED** into a new case.  That new case shall be: Claims against **DEFENDANTS BEST, BERRY, BROWN, EILTS,** and **JOHN DOES #2 and #5.**

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.

In the new case, the Clerk is **DIRECTED** to file the following documents:

    (1)    This Memorandum and Order

    (2)    The First Amended Complaint (Doc. 7)

    (3)    Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (**on or before June 17, 2013**).  Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case.  If Plaintiff does not voluntarily dismiss the severed claims in Counts 4 and 5, the severed case shall be transferred to the Central District of Illinois for consideration of Plaintiff's motion to proceed IFP, service of process, and further proceedings as directed by that Court.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNTS 1, 2, 3 and 6.*  This case shall now be captioned as: **ALLEN NEELY CAFFEY, Plaintiff, vs. S. HENRY, HASEMEYER, MAUE, SCOTT, MOORE, and RICHARD, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **BEST, BERRY, BROWN, EILTS,** and **JOHN DOES #2 and #5** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1, 2, 3 and 6**, which remain in the instant case, the Clerk of Court shall

prepare for Defendants **HENRY, HASEMEYER, MAUE, SCOTT, MOORE, and RICHARD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 7), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   May 13, 2013

                                              s/ *G. Patrick Murphy*
                                              G. PATRICK MURPHY
                                              United States District Judge