UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ALLEN NEELY CAFFEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 13-3296 |
| | ) |
| CAPTAIN BEST, *et al.* | ) |
| | ) |
| Defendants. | ) |

**SUMMARY JUDGMENT OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at Cook County Jail, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging Eighth Amendment claims for events that allegedly transpired during his incarceration at Pontiac Correctional Center. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Doc. 48). The motion granted in part and denied in part.

**PRELIMINARY MATTERS**

**Plaintiff's Motion to Compel (Doc. 44)**

Plaintiff filed a Motion to Compel (Doc. 44) seeking the Court to order the Defendants to (1) provide the identity of Defendant

John Doe #5, and (2) answer a set of interrogatories Plaintiff sent "prior to the November 2, 2016 discovery deadline."

The Court previously ordered Defendants to provide Plaintiff with the names of the two (2) Doe defendants Plaintiff named in his Complaint.  See Text Order entered January 15, 2016.  Defendants filed a Notice of Compliance (Doc. 39) indicating that two medical technicians (a male and a female) were working at Pontiac at the time Plaintiff identified.  As to the second Doe defendant, Defendants indicated that Plaintiff had not provided a date or time for the alleged encounter Plaintiff had with the Doe correctional officer.  Defendants indicated that between 50-125 correctional officers were assigned to the Maximum Security Unit during Plaintiff's 27-day incarceration in that unit, and, without more information, Defendants could not sufficiently identify the officer in question.

As to the interrogatories, Plaintiff states in his motion that he served the interrogatories on March 28, 2016, four days before discovery was then set to close.  See (Doc. 44 at 3); Text Order entered January 15, 2016 ("Discovery shall be completed by April 2, 2016.").  Per the Court's Scheduling Order, "[w]ritten discovery

requests must be mailed to a party at least 30 days before the discovery deadline." (Doc. 23 at 8, ¶ 17).

The Court's Scheduling Order also required that Plaintiff file a motion to compel within 14 days of receiving an unsatisfactory response and to attach copies of the disputed discovery requests. Id., ¶ 19.  Plaintiff did neither.  Plaintiff, instead, waited more than eight (8) months from the date of the Defendants' alleged response, and two (2) weeks after discovery closed to file the present motion.  Therefore, Plaintiff's motion is denied.  See <u>Flint v. City of Belvidere</u>, 791 F.3d 764, 768 (7th Cir. 2015) (noting that discovery must have an endpoint and "district courts are entitled to—indeed they must—enforce deadlines.").

**Plaintiff's Motion to Substitute Defendant (Doc. 45)**

Plaintiff filed a motion seeking to substitute Jennifer Tinsley in place of John Doe #2.  (Doc. 45).  Plaintiff filed this motion after discovery closed despite the fact that he has had this information since February 2016.  Plaintiff does not explain why he waited approximately eight (8) months to file this motion.  The Court finds that allowing Plaintiff to substitute a Doe defendant at this stage of the proceedings would unduly prejudice the Defendants.  Plaintiff

had ample opportunity to file this motion prior to the close of discovery and prior to his own deposition. See (Doc. 49-1 at 3) (Plaintiff's deposition taken October 25, 2016). Plaintiff did not do so. Plaintiff's motion is denied.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

On July 29, 2011, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac"). During the transfer, a correctional officer from the former prison hit Plaintiff one time in the head with a baton. The strike caused a painful lump on Plaintiff's head and the record suggests that Plaintiff's head was not bleeding. Plaintiff also lost his pair of shoes during the transport.

Plaintiff requested medical treatment upon arrival at Pontiac. Medical records indicate that Plaintiff received some type of medical screening at that time, but the extent of such is not clear. Pl.'s Dep. 22:9-20 ("I said…I need a doctor, my head hurt, my feet hurt, you know."); (Doc. 49-5 at 2) (Offender Health Status Transfer Summary indicating Plaintiff had no current complaints). Plaintiff was taken to a holding cell where he did not inform any other prison officials about his injury. Id. 24:2-3 ("I sat there and followed the instructions. I kept my mouth shut."); 25:17 ("I kept my head down and my mouth shut.").

Plaintiff was housed in the segregation wing. Upon arrival, Plaintiff's cell smelled like urine, had water on the floor, a clogged sink, and a dirty toilet. Plaintiff's requests for cleaning supplies

were denied.  Plaintiff used his jumpsuit to clean up the water, removed the water in the sink with an empty milk carton from a meal tray, and was able to clean his toilet with soap particles Defendant Best[1], a correctional officer, allowed him to collect from the shower area.  Pl.'s Dep. 31:16-17 ("I took the jumpsuit off, and I used it to pick up the water."); 32:3-5 ("I used the milk carton [to scoop the water] out of the sink and poured it into the toilet."); 53:3-4 ("[Defendant Best] gave me a chance to collect as much [soap] as I thought I [sic] need."). The water was cleaned off the floor within 3-5 hours of Plaintiff's arrival in the cell, and the water removed from the sink within a half day. Id. 38:12-21.

Plaintiff was housed in that cell for the next 32 days.  During that time, Plaintiff felt the after effects of the baton injury and loss of his shoes.  Specifically, Plaintiff testified that he continued to experience headaches, bouts of dizziness that forced him to lie down, and pain in his feet.  After approximately 13 days, Plaintiff developed sores in his mouth that remained until Plaintiff received medical treatment at another prison.  Plaintiff made daily verbal requests for medical treatment, but his requests fell on deaf ears.

---

[1] The Court substituted Debra Kelso, executor for the estate of Tyler Best, as a defendant in its Text Order entered February 23, 2015.

Defendants, instead, told Plaintiff to file a written request or a grievance.  E.g. id. 43:4-14.

Plaintiff did not file any grievances or formal requests because prison officials refused to provide him with a pen and paper, and they did not provide him with his property until August 30, 2011. Plaintiff's lack of access to his property also caused him to be without toothpaste and a toothbrush for approximately 30 days, given that officials refused to provide Plaintiff with state-issued hygiene supplies.  Defendant Eilts states in his affidavit that he told Plaintiff that it takes two-to-three weeks for an inmate's property to be processed after a transfer from another prison.  Eilts Aff. ¶ 11 (Doc. 49-10 at 3).  Defendants do not explain why Plaintiff had to wait longer.

## ANALYSIS

### Medical Claims

Inmates are entitled to adequate medical care under the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need.  Id. at 105. Claims of negligence, medical malpractice, or disagreement with a

prescribed course of treatment are not sufficient.  McDonald v. Hardy, 821 F.3d 882, 888 (7th Cir. 2016) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014), and Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)).  Rather, liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff did not receive any medical treatment while housed in the segregation cell.  Where access to medical treatment is the issue, prison guards may be held liable for "intentionally delaying or denying [such] access."  Estelle, 429 U.S. at 104.  Defendants argue that they are entitled to summary judgment because (1) Plaintiff did not suffer from an objectively serious medical need; and (2) that the Defendants were not deliberately indifferent.

"An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  King v. Kramer, 680 F.3d 1013, 1018 (7th

Cir. 2012) (internal quotations omitted). In evaluating the seriousness of a medical condition, the court evaluates several factors: (1) whether failure to treat the condition would result in further significant injury or the unnecessary and wanton infliction of pain; (2) whether a reasonable doctor or patient would find the alleged injury worthy of comment or treatment; (3) the existence of a medical condition that significantly affects daily activities; and, (4) the existence of any chronic and substantial pain. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff testified that he suffered from headaches over the 32-day period, and that he experienced bouts of dizziness that required he lie down until the symptoms abated. These symptoms, if they persisted over an extended period of time, could certainly suggest a more serious condition for which a lay person would seek treatment or a physician would deem worthy of comment. Moreover, Plaintiff could have experienced substantial and prolonged pain without displaying any objective symptoms of such. Questions of whether the severity and duration of the pain Plaintiff experienced were significant enough to warrant treatment are properly resolved by the trier of fact. See Cooper v. Casey, 97 F.3d 914, 917 (7th Cir.

1996).  When viewed in the light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiff suffered from an objectively serious medical need.

Next, Defendants argue that, even if Plaintiff suffered from an objectively serious medical need, they were not deliberately indifferent.  In support of their argument, Defendants assert that they "would have had knowledge that it is standard procedure for an inmate to be seen by medical personnel upon arriving at Pontiac and that Plaintiff would have been scheduled for physician's sick call if he had any acute or immediate medical needs."  (Doc. 49 at 16).  Therefore, Defendants argue, that they were entitled to defer to the judgment of the medical staff.

The prevailing case law in the Seventh Circuit absolves nonmedical prison officials of constitutional liability in cases where the official deferred to the judgment of the medical staff.  See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)); Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference where nonmedical prison official

investigated inmate's complaints and referred then to medical providers who could be expected to address the concerns); Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (no deliberate indifference where nonmedical prison official referred inmate complaints to medical providers).  As the Seventh Circuit explained:

> If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison.  Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

Greeno, 414 F.3d at 656 (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).  In other words, "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so."  Berry, 604 F.3d at 440.

    The prison officials in the cases cited above took affirmative steps to investigate the complaints made by the inmates, including consultation with medical staff.  See id. (nonmedical prison official

"consulted with the medical staff, forwarded [the inmate's] concerns to DOC, and timely responded…."); Hayes, 546 F.3d at 520 (Assistant Warden consulted with medical staff on several occasions and referred concerns to medical providers); Greeno, 414 F.3d at 655-56 (official reviewed complaints and verified with medical officials that inmate was receiving treatment).

 Here, Defendants cannot offer testimonial evidence that they investigated Plaintiff's medical complaints because they do not remember the events in question, or, in Defendant Best's case, cannot offer an affidavit.  Berry Aff. ¶ 7 (Doc. 49-6 at 3); Eilts Aff. ¶ 7 (Doc. 49-10 at 3); Brown Aff. ¶ 6 (Doc. 49-2 at 3); (Doc. 16) (Suggestion of Death for Defendant Best).  The medical records presented to the Court contain no reference to inquiries made by the Defendants in reference to Plaintiff's complaints.  If Defendants had inquired, the lack of medical records suggests that they would have discovered Plaintiff had not received any medical treatment.

 The policy manual upon which Defendants rely provides that inmates seeking medical treatment must "contact the Corrections Medical Technician in [his] living area or [] submit a medical request form to the Health Care Unit." (Doc. 49-3).  Plaintiff could

not submit a medical request form because he was denied pen and paper. When Plaintiff requested medical attention from Defendant Brown, the Corrections Medical Technician in his unit, Defendant Brown "would say, you have to file a formal request." Pl.'s Dep. 54:2-3. From this evidence, a trier of fact could reasonably conclude that the Defendants intentionally denied Plaintiff access to medical treatment. Accordingly, Defendants are not entitled to judgment as a matter of law.

## Denial of Hygiene Items

Plaintiff was denied his property for approximately 30 days, which included his toothbrush and toothpaste. He was not provided state-issued hygiene supplies during that time. The Eighth Amendment provides two avenues under which the Court can analyze Plaintiff's claims: the denial of adequate medical care for Plaintiff's present medical needs; or, for the denial of essential hygiene products necessary to prevent future maladies, a separately cognizable constitutional right akin to an inmate's right to adequate nutrition. See Board v. Farnham, 394 F.3d 469, 482 (7th Cir. 2005).

As to the former, Plaintiff testified that he developed sores in his mouth as a result of the denial of toothpaste and his

toothbrush.  Defendants point out that these sores were easily treated once Plaintiff received medical treatment, but the determination as to whether these sores constituted a serious medical need lies with the trier of fact.  The fact that these sores were easily treated, but that Defendants obstructed Plaintiff's access to medical care anyway, allows for an inference of deliberate indifference.  See Petties v. Carter, 836 F.3d 722, 730 (7th Cir. 2016) ("[A]n inexplicable delay in treatment which serves no penological interest" can support an inference of deliberate indifference) (citations omitted).

For the latter, the deprivation of toothpaste and a toothbrush for approximately 30 days could result in an objectively serious harm to Plaintiff's future health.  Board, 394 F.3d at 483.  The Seventh Circuit has previously affirmed the grant of summary judgment where a prisoner was denied oral hygiene products for 31 days, but in that case, the prison officials presented undisputed medical evidence that lack of brushing would not have exacerbated the prisoner's periodontal disease.  See Andreyev v. Kjorlie, 455 Fed. Appx. 693 (7th Cir. 2011) (nonprecedential decision).

Defendants have not presented similar medical evidence in this case.

Therefore, the Court finds that a reasonable juror could conclude that Defendants violated Plaintiff's rights both in the context of his right to adequate medical care and his freestanding right to basic hygiene items.

### Conditions-of-Confinement

To prevail on an Eighth Amendment claim for inhumane conditions of confinement, a prisoner must show that (1) he suffered a deprivation serious enough that it resulted in the denial of the minimal civilized measure of life's necessities, and (2) that prison officials acted with deliberate indifference to those conditions.  Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing Farmer, 511 U.S. at 834) (internal quotations omitted).

Plaintiff alleged that he endured unsanitary conditions in his cell for a relatively short period until he was able to remedy the problem with his jumpsuit and soap Defendant Best allowed him to collect from the shower area.  The pieces of soap may not have been the cleaning supplies Plaintiff desired, but they enabled Plaintiff to clean his cell and Plaintiff was not denied access to running water.

Pl.'s Dep. 30:18-23 (sink faucet and toilet worked).  The deprivation Plaintiff experienced falls short of the types of extreme deprivations the Seventh Circuit has recognized as violating the Eighth Amendment.  See Budd v. Motley, 711 F.3d 840, 843 (7th Cir. 2013) (alleged unhygienic conditions and lack of access to running water and cleaning supplies); Vinning-El v. Long, 482 F.3d 923, 923-24 (7th Cir. 2007) (prisoner placed in cell with blood and feces on the walls, without running water or sanitation supplies); Johnson v. Pelker, 891 F.2d 136-139-40 (7th Cir. 1989) (cell smeared with feces and prisoner denied water and cleaning supplies).

In addition, when Plaintiff complained to Defendant Best about the conditions in his cell, Defendant Best allowed Plaintiff to collect the soap from the shower area.  The record does not disclose the reasons why Plaintiff was not provided with other cleaning supplies, but, under the circumstances, no reasonable inference exists that Defendant Best acted with deliberate indifference, or that the other Defendants had knowledge of the cell conditions. Therefore, the Court finds that no reasonable juror could conclude that the Defendants violated Plaintiff's Eighth Amendment rights as it relates to Plaintiff's cell.

## Qualified and Sovereign Immunity

Defendants assert the defense of qualified immunity. "[G]overnment officials performing discretionary functions are immune from suit if their conduct could reasonably have been thought consistent with the rights they are alleged to have violated." Borello v. Allison, 446 F.3d 742, 746 (7th Cir. 2006) (citations omitted). To determine if qualified immunity applies, the court conducts a two-prong analysis: (1) whether "the disputed conduct, as alleged, violates a constitutional right;" and, (2) "whether that right was 'clearly established' at the time of the alleged conduct." Id. (citing Wernsing v. Thompson, 423 F.3d 732, 742 (7th Cir. 2005)). Disputed facts are viewed in the light most favorable to the plaintiff. Id.

The rights to adequate medical care and basic hygiene items were clearly established at the time of Plaintiff's incarceration at Pontiac. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Board, 394 F.3d at 483-84 (affirming the denial of qualified immunity for the alleged denial of oral hygiene products). Therefore, the Court finds that Defendants are not entitled to qualified immunity.

With regard to sovereign immunity "a suit against a state official in his or her official capacity is …no different than a suit against the state itself." Id. at 883 (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). "A suit against a state may be brought in federal court only when (1) a state official is sued for prospective equitable relief under Ex Parte Young, 209 U.S. 123, 159-60 (1908); (2) Congress abrogates the State's immunity pursuant to its powers under section 5 of the Fourteenth Amendment; or (3) the State consents and waives its immunity." Id. (citations omitted).

None of these exceptions apply in the present case, and, therefore, the Court finds that Plaintiff's claims against Defendants in their official capacities are barred by sovereign immunity.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motions [44][45] are DENIED.**

2) **Defendants' Motion for Summary Judgment [48] is GRANTED in part, and DENIED in part.  The motion is granted as it relates to Plaintiff's conditions-of-confinement claim and claims against the Defendants in their official capacities.  The motion is denied as to all other claims and defendants.**

3) **Pursuant to Local Rule 16.1(B), this case is referred to Magistrate Judge Schanzle-Haskins for a settlement conference.  Clerk is directed to notify Judge Schanzle-Haskins' chambers of this referral.  Judge Schanzle-Haskins' chambers will contact the parties to schedule the settlement conference.**

4) **The Court will address Defendants' Motion to Continue Trial Date [53] after the settlement conference.**

ENTERED:     January 23, 2017.

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE